467 P.2d 715

**F. A. ARELLANO, Tom P. Crenshaw, Dave Zamora and Rudolph Schwartz, Plaintiffs-in-Error,**

v.

**Ruben LOPEZ, Mayor of the Village of Cimarron, Defendant-in-Error.**

No. 8869.

Supreme Court of New Mexico.

March 31, 1970.

Rehearing Denied April 22, 1970.

Wright & Kastler, Raton, for plaintiffs in error.

McAtee, Marchiondo & Michael, Charles G. Berry, Albuquerque, for defendant in error.

OPINION

MOISE, Chief Justice.

Plaintiffs in error were members of the Town Council of the Village of Cimarron when this action was commenced. They will be hereinafter referred to as defendants as they were in the court below. Defendant in error was the Mayor of the Village of Cimarron and plaintiff below. He will be so designated here. Plaintiff, by his complaint, sought removal from office of defendants Arellano, Crenshaw, and Zamora, because of claimed malfeasance in office. In a second count to the complaint plaintiff sought a declaration that the appointment of defendant Schwartz as a member of the Village Council was null and void and an order removing him from office. In a third cause of action plaintiff asked the court to declare that defendant Chavez had been illegally and improperly appointed as a police officer in the Village, and that he be removed from the office. For a fourth cause of action plaintiff asked for compensatory and punitive damages from the defendants because of the expense to which he had been put in employing counsel and bringing the action, and because of the alleged "willful, wanton, malicious, arbitrary, capricious, fraudulent conduct" of the defendants. The third count concerning defendant Chavez was dismissed by the court, as was the fourth count wherein compensatory and punitive damages were sought. No appeal or writ of error was prosecuted from these dismissals. Accordingly, the questions presented by counts one and two were tried to the court, and resulted in a conclusion that the three defendants named in cause of action number one were guilty of "intentionally, willfully, arbitrarily, capriciously, and maliciously enter[ing] into a plan or scheme between them to harass plaintiff and usurp the powers and duties of the office of mayor" and that because of their actions they should be removed. Concerning count two, the court concluded that the appointment of defendant Schwartz was wrongful and illegal and should be declared null and

void, and that after his appointment defendant Schwartz joined with the other defendants in their plans and schemes and accordingly was guilty of malfeasance in office and should be removed. From the judgment entered pursuant to the court's decision, defendants sought and obtained the issuance of a writ of error by this court.

Although the court's findings disclose a number of matters of conflict between the plaintiff and defendants, they are summarized by plaintiff in his answer brief as follows:

"1. Refused to advise and consent to the appointment of Joe Rosso to fulfill the vacancy on the Village Council.

"2. Refused to advise and consent to the appointment of Gene Pompeo to fulfill the vacancy on the Village Council.

"3. Appointed, over the objections of plaintiff, Mr. Rudolph Schwartz to fulfill the vacancy existing on the Village Council.

"4 The defendant Rudolph Schwartz joined into such scheme by accepting such appointment and proceeding to act thereunder.

"5. Refused to act upon the appointments submitted to them to fulfill the vacancy of police officer.

"6. Refused to act upon appointments submitted to them by the plaintiff to fulfill the vacancy of water superintendent.

"7. Reappointed Mr. Paul Chavez to the office of police officer over the objections of the plaintiff.

"8. Proceeded to take over the supervision of the village police department."

Without attempting to detail the facts surrounding each of these items, it should be sufficient to note that the record discloses a considerable conflict existed between the parties. They arose primarily because of the defendants' refusal to approve either of two men nominated by plaintiff to fill a vacancy on the Council, and because when plaintiff left a regular meeting of the Council before adjournment,

upon a nomination by the president "pro tem" of the Council, the three members proceeded to appoint defendant Schwartz and have him immediately sworn into office. Also, a conflict existed between plaintiff and the three Council members, exclusive of defendant Schwartz, over appointment of a police chief and water superintendent.

Accordingly, we are called upon to determine that the acts of defendants constitute malfeasance in office as that term is used in § 14–9–8, N.M.S.A., 1953 Comp., reading:

> "Any person elected or appointed to an elective office of a municipality may be removed for malfeasance in office by the district court upon complaint of the mayor or governing body of the municipality. * * *"

The powers of the mayor are set forth in §§ 14–10–2 to 14–10–7, N.M.S.A., 1953 Comp. Of particular importance to a consideration of our problem are §§ 14–10–5 (A), 14–10–6(A) (1), and 14–11–1, N.M.S. A., 1953 Comp. These sections read:

14–10–5:

> "A. At the organizational meeting of the governing body, which shall be held on the second Monday following the election, the mayor shall submit, *for confirmation by the governing body,* the names of persons who shall fill the appointive offices of the municipality and the names of persons who shall be employed by the municipality. *If the governing body fails to confirm* any person as an appointive official or employee of the municipality, the mayor at the next regular meeting of the governing body shall submit the name of another person to fill the appointed office or to be employed by the municipality." (Emphasis added.)

14–10–6:

> "A. *Subject to the approval of a majority of all members of the governing body,* the mayor shall:

> (1) appoint all officers and employees except those holding elective office; * * *." (Emphasis added.)

14–11–1:

> "Any vacancy on the governing body of a mayor-council municipality shall be filled by appointment of a qualified elector by the mayor of the municipality, *with the advice and consent of the governing body.* Any qualified elector appointed to fill a vacancy on the governing body shall serve until the next regular municipal election, at which time a qualified elector shall be elected to fill the remaining unexpired term, if any." (Emphasis added.)

■ From the plain language of the statutes quoted, the governing body has an important part to play in the selection of the appointive officers and employees of the municipality, and in the selection of a person to fill a vacancy on the village council. In failing to approve the Mayor's selection, or in refusing to give "advice and consent" to the Mayor's selection of a particular person to fill a vacancy on the Council, and in filling it themselves, were the defendant members of the Council guilty of malfeasance and accordingly subject to removal upon complaint of the Mayor under § 14–9–8, supra? We are convinced that the simple answer must be in the negative. The power to appoint being in the mayor, subject to "confirmation by the governing body," or "[s]ubject to the approval of a majority of all members of the governing body," or "with the advice and consent of the governing body," there can be no appointment until the confirmation, approval, or advice and consent, as the case may be, has been obtained. See Strachan v. Mayor of Everett, 326 Mass. 659, 96 N.E.2d 392 (1951); Broadwater v. Booth, 116 W.Va. 274, 180 S.E. 180 (1935); State ex rel. Sandquist v. Rogers, 93 Mont. 355, 18 P.2d 617 (1933).

■ The only cause for removal contained in the statutes is malfeasance. The term "malfeasance" has been variously de-

fined as a comprehensive term which includes any wrongful conduct affecting performance of official duties, State ex rel. LaMon v. Town of Westport, 73 Wash.2d 255, 438 P.2d. 200, 202 (1968); or as a wrongful act which the actor had no legal right to do, or any wrongful conduct which affects, interrupts, or interferes with performance of official duties, or an act for which there is no authority or warrant of law or which a person ought not to do at all, or the unjust performance of some act, which party performing it has no right, Daugherty v. Ellis, 142 W.Va. 340, 97 S.E. 2d 33 (1956); or doing an act which is wholly wrongful and unlawful, and which an officer has no authority to do, and if the act is discretionary it must have been done with an improper or corrupt motive, People v. Schneider, 133 Colo. 173, 292 P.2d 982, 985 (1956); also, as evildoing, the doing of an act which is wholly wrongful and unlawful, State v. Langley, 214 Or. 445, 315 P.2d 560, 323 P.2d 301, 309 (1958). We quote from State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 129 (1934):

> "Malfeasance has reference to evil conduct or an illegal deed, the doing of that which one ought not to do, the performance of an act by an officer in his official capacity that is wholly illegal and wrongful, which he has no right to perform or which he has contracted not to do. 'Words and Phrases, First, Second, Third, and Fourth Series, malfeasance; Webster's New International Dictionary.'
>
> "Misfeasance is sometimes loosely applied in the sense of malfeasance. Appropriately used, misfeasance has reference to the performance by an officer in his official capacity of a legal act in an improper or illegal manner, while malfeasance is the doing of an official act in an unlawful manner. Misfeasance is literally a misdeed or a trespass, while nonfeasance has reference to the neglect or refusal without sufficient excuse to do that which was an officer's legal duty to do."

The following is stated in Jacobsen v. Nagel, 255 Minn. 300, 96 N.W.2d 569 (1959):

> "That which constitutes malfeasance in an official capacity is not susceptible of an exact definition. It 'has reference to evil conduct or an illegal deed, the doing of that which one ought not to do, the performance of an act by an officer in his official capacity that is wholly illegal and wrongful.' 43 Am.Jur., Public Officers, § 195."

The definitions could be multiplied manyfold, but to no purpose. Those set forth above should suffice.

In the light of these definitions we must here decide if the facts as found support the finding of malfeasance and the removal based thereon. We have no question in our minds that merely failing to consent to or approve an appointment cannot possibly come within any of the definitions above set forth. This is certainly true of the discretionary acts here in question unless done with improper, unlawful, or corrupt motives. People v. Schneider, supra. The court found that the acts in question were done intentionally, wilfully, arbitrarily, capriciously, and maliciously as a part of a plan or scheme entered into between them to harass the plaintiff. We assume, for the sake of argument, that the acts, if performed with the motives and for the reasons found by the court, would constitute malfeasance, but we do not find in the proof anything that can be described as substantial evidence which supports the descriptive terms used. All we see is a disagreement between officials, well within their statutory powers. The reasons may have been personal antagonism or animosity, it may have been politically motivated, or it may have been the result of something totally different, but how the recitals in the record as to what transpired at the various meetings of the Council when viewed in their best light in support of the findings made can possibly support a finding of malice or conspiracy to harass or an inference to this effect is beyond us. It is our conclusion that there is a total absence

of substantial evidence or inferences to support the court's findings as to reasons and motives, and accordingly they cannot stand in support of the conclusion of removal. Compare Herrell v. Piner, 78 N.M. 664, 437 P.2d 125 (1968).

We would add a word that malfeasance should never be inferred or elected officials removed from the office to which the public has elected them without strong proof of wilful and knowing wrongdoing. Vandergriff v. State, 185 Tenn. 386, 206 S. W.2d 395 (1937); Bateman v. State, 214 Ind. 138, 14 N.E.2d 1007 (1938); State v. Manning, 220 Iowa 525, 259 N.W. 213 (1935); In re Higgins, 266 App.Div. 762, 41 N.Y.S.2d 122 (1943); In re Shoaf, 370 Pa. 567, 88 A.2d 871 (1952), from which we quote:

"When the people of any municipality, in a duly constituted election, select certain individuals to conduct their local government, those representatives of the people may be removed from office only upon showing of a perverseness which amounts to criminality or culpable indifference to their official duties." See, also, Jacobsen v. Nagel, supra.

A special word is required concerning the question arising by virtue of the appointment of defendant Schwartz by the mayor pro tem. That there may be a real question concerning the legality of this appointment we do not doubt since the power to fill vacancies in the Council is by statute placed in the mayor with advice and consent of the Council. § 14–11–1, N.M.S. A. 1953. However, if we assume, without deciding the issue that the appointment was invalid, the term for which defendant Schwartz was elected has expired and whatever effects may have been present in his original selection, the question is now moot. See In re Thaxton, 78 N.M. 668, 437 P.2d 129 (1968). We are advised that he is now a member of the Council by virtue of having been elected. We see no purpose to be served by any pronouncement we might make concerning the argument which surrounded his original appointment and efforts to have the appointment declared illegal and void. At least during the period he served under the appointment, whether legal or not, he was a de facto member of the Council, if not a de jure one. See 3 McQuillen, Municipal Corporations (3rd Ed.Rev.), § 12.102. He was clothed with all the powers of a de jure councilman if, indeed, he was not one. 3 McQuillen, Municipal Corporations (3rd Ed.Rev.), §§ 12.106 and 12.107.

We are satisfied that no sufficient showing was made of such malfeasance in office as would support the trial court's findings and conclusions. It follows that the judgment of removal should be reversed.

It is so ordered.

COMPTON and TACKETT, JJ., concur.