F I L E D
United States Court of Appeals
Tenth Circuit

MAR 31 1999

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TONY (CHESTER) E. MAEZ,

    Plaintiff/Counter-
    Defendant/Appellant,

v.

COPPLER & ARAGON, P.C.;
COPPLER, ARAGON & MINNICK,
P.C.; FRANK COPPLER; JOHN
ARAGON,

    Defendants/Appellees,

and

VILLAGE OF CHAMA,

    Defendant/Counter-Claimant/
    Appellee.

No. 97-2378
(D.C. No. CIV 96-1548)
(District of New Mexico)

**ORDER AND JUDGMENT**[*]

Submitted on the briefs:

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **PORFILIO**, **LUCERO**, and **COOK**,\** Circuit Judges.

_____

**PORFILIO**, Circuit Judge.

_____

This is a 42 U.S.C. § 1983 civil rights case. Plaintiff Tony Maez served as Police Marshal of the Village of Chama in New Mexico until he was discharged by the mayor and the Village's council for failing to control a shooting incident which left one resident dead and another seriously wounded. Mr. Maez sued the Village and the Village's lawyers alleging that the termination procedure deprived him of procedural due process. The district court entered summary judgment for the defendants on this claim because it found Mr. Maez to be an appointed official with no property interest in his employment. Mr. Maez appeals that decision. We affirm.

**I**

The circumstances leading to this appeal stem from the plaintiff's behavior during a shooting incident in September 1994. Mr. Maez had stopped at a local bar while on a routine patrol to conduct a "bar check." He remained at the bar for several hours during which he drank and shot pool with others. During that time, two teenagers were running

_____

\**The Honorable H. Dale Cook, United States District Judge for the Northern District of Oklahoma, sitting by designation.

loose in town and shooting at people, cars, and street lights. The Village dispatcher tried to reach Mr. Maez for thirty minutes but was unable to do so. In the meantime, a resident of the town was shot and killed by the teenagers. When Mr. Maez finally responded, he enlisted the assistance of another resident to help apprehend the suspects. Unfortunately, the resident was of little help and was subsequently shot in the eye by the teenagers. The State Police soon arrived and took control of the situation; no one else was harmed.

The residents of the Village were enraged over Mr. Maez's failure to control the violence, particularly because Mr. Maez could not explain his whereabouts for the thirty minutes the dispatcher was trying to find him, or why he enlisted the assistance of a resident. On October 14, 1994, pursuant to a recommendation by the mayor, the Village council unanimously voted to dismiss Mr. Maez from his position as Village Marshal.

Mr. Maez brought this action against the Village and the Village's lawyers alleging the termination process was unfair and violated his right to procedural due process. The defendants moved for summary judgment, which the district court granted. Relying on New Mexico state law, the court concluded there could be no due process violation because Mr. Maez's position was appointed and he thus had no property interest in his employment.

**II**

We review a district court's grant of summary judgment *de novo* and are bound by the same standards of analysis as the district court. *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir. 1999). A grant of summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

**III**

Although Mr. Maez advances several arguments on appeal, the main and dispositive issue in this case is whether his employment constituted a "property interest" under the due process clause. To state a claim for a due process violation, Mr. Maez had to establish that the Village deprived him of some definite liberty or property interest without appropriate process. *See Board of Regents v. Roth*, 408 U.S. 564 (1972). Mr. Maez contends he held a protected property interest in his employment because he was an "employee" who could only be fired for cause. The Village counters he was an "appointed official" at the time he was terminated and therefore he had no property interest in his employment. *See Silva v. Town of Springer*, 121 N.M. 428 (N.M. Ct. App. 1996) (appointed officials have no property interest in their employment).

The district court agreed with the Village and concluded Mr. Maez had no property interest in his employment. The court stated:

First, Mr. Maez had no written contract of employment establishing a property right. Second, Mr. Maez had no implied contract of employment. . . . [¶] Mr. Maez was an appointed official under both NMSA § 3-12-4(A) and (C). [A] fair reading of Mayor Tony Gonzales' deposition testimony is that he appointed Mr. Maez town marshal or chief of police in early 1994. In addition, Mr. Maez never disputes that he was at least deputy marshal of the Village of Chama, thus making him an appointed official under the rubric of NMSA § 3-12-4(C).

In coming to its conclusion, the court also relied on a Village ordinance which provides that the positions of Village Marshal and Deputy Village Marshal are appointed officials. *See* Chama Ord. No. 1962-35 ("[T]he mayor by and with the consent of the board of trustees . . . [shall appoint], in each year, . . . one village marshal and one deputy village marshal.").

Our plenary review of the matter leads us to concur with the district court's analysis. The Village has identified those portions of the record which indicate that Mr. Maez was an appointed official at the time he was terminated. The Village first relies on Mr. Maez's own deposition testimony in which he admits that he became the Village Marshal in 1979 and remained so until he was terminated in late 1994. For fifteen years, Mr. Maez held himself out as the Village Marshal or Chief of Police, signed numerous records as Marshal/Chief of Police, was known to third parties as the Marshal or Chief of Police, and wore a badge identifying himself as Chief of Police. Furthermore, Mr. Maez accepted the pay of Marshal which was more than the Deputy Marshal's pay. He also testified that during the course of fifteen years no mayor ever challenged his position as Marshal or sought to demote him. Moreover, Mayor Tony Gonzales testified that after he

was elected mayor in 1994 he reappointed Mr. Maez as the Village Marshal. And finally, in the Village's interrogatory responses, the Village confirmed that Mayor Gonzales had reappointed Mr. Maez as Marshal in 1994 and that Mr. Maez had been the Marshal since 1979.

Mr. Maez's attempt to rebut this evidence falls short. To survive summary judgment, he must designate specific facts drawn from the materials on file which could lead a rational trier of fact to find he was a non-appointed employee. This he has not done.

Mr. Maez first challenges Mayor Gonzales' testimony that he reappointed Mr. Maez as Marshal in 1994. He claims the mayor's testimony conflicts with his earlier deposition testimony where the mayor stated "he had no knowledge one way or the other whether Maez was an appointed official." The mayor's "sudden change" in testimony, he claims, creates a genuine issue of material fact.

A close reading of the mayor's original deposition testimony and subsequent testimony reveals there is no inconsistency between the two. Mayor Gonzales' original testimony was in response to a question that focused on what *previous* mayors or councils had done in 1978. The deposition colloquy was as follows:

> MAEZ'S COUNSEL: You don't know if [Mr. Maez] was appointed as a marshal or as a deputy marshal or was an employee; is that fair to say?
>
> GONZALES: That's fair to say.
>
> GONZALES' COUNSEL: At what point in time?

MAEZ'S COUNSEL: Back in 1978.

MAEZ'S COUNSEL: You have no knowledge or information whether he ever was appointed by the Village council to the position of marshal?

GONZALES: I don't have any knowledge. I don't know how he was hired or appointed or any of those.

MAEZ'S COUNSEL: Or whether he ever became appointed?

GONZALES: Right.

Mayor Gonzales and counsel later submitted the following clarification: "I don't have any knowledge whether [Mr. Maez] was hired or appointed before I became Mayor. When I became Mayor in 1994 I appointed [Mr. Maez] Marshal." The clarification is consistent with a common sense reading of his original deposition, and we can find no change in the substance of what he said which would require us to question Mayor Gonzales' testimony and declare the subsequent clarification a sham.

Mr. Maez next offers the affidavits of Candie Martinez, the mayor of the Village of Chama from 1978 to 1982, and Ben Martinez, the police commissioner from 1978 to 1982. Mayor Martinez states that "[t]o the best of my knowledge, [Mr. Maez] was hired as an employee, subject to the personnel policies and procedures of the Village of Chama." Commissioner Martinez states that to "the best of my recollection, the Village Council never formally promoted [Mr. Maez] to the position of 'Police Chief' by resolution or motion." These affidavits do not help Mr. Maez's cause. These statements

pertain to his employment status in the late 70s and early 80s and are not relevant to his employment status at the time he was terminated in late 1994.

Mr. Maez next argues there was an employment contract between himself and the Village in which he was referred to as an "employee," thus suggesting he was not an appointed official. The document he refers to is a 1980-1981 contract in which the Village agreed to pay for his police training at the New Mexico Law Enforcement Academy in exchange for Mr. Maez's promise to remain as a police officer in the Village for at least one year after completion of the training. Once again, this evidence does not create a genuine issue of material fact because, by its own terms, the agreement was in effect only from March 8, 1980 to March 7, 1981. The agreement does not shed any light on Mr. Maez's employment status in 1994.

Mr. Maez further claims he received overtime wages during his tenure as Marshal and that this is evidence he was an employee rather than an appointed official. However, Mr. Maez provides no authority whatsoever to suggest that an appointed official does not or cannot receive overtime compensation. Therefore, this evidence is of no probative value.

On a related note, Mr. Maez contends he was an employee who could only be fired for cause because the Village admitted in response to a request for an admission that Mr. Maez "could only be discharged from his employment *for a reason*." Mr. Maez argues this means he could only be fired for cause. We disagree. There is a significant

difference between the two phrases. "For cause" is a legal term of art with a distinct meaning; "for a reason" carries no such legal baggage. Therefore, the admission is of little probative value.

Finally, Mr. Maez argues that he could not have been appointed because there is no written record that he was appointed by the "mayor by and with the consent of the board of trustees" of the Village of Chama. He claims the Village Ordinance and the parallel New Mexico statute, NMSA § 3-11-6, require written resolutions or minutes of his appointment. We have reviewed the statute and the ordinance and can find no such requirement. Even if there were such a requirement, the failure to comply with it would not automatically convert Mr. Maez into an employee with a property interest. Indeed, the New Mexico Supreme Court's decision in *Arellano v. Lopez*, 81 N.M. 389 (1970), suggests as much.

In *Lopez*, the supreme court interpreted the predecessor to section 3-11-6 and concluded that a defect in the appointment process does not necessarily infect an appointment to the extent of making it null and void. The court stated that "at least during the period he served under the appointment, whether legal or not, he was a de facto [appointed official], if not a de jure one." *Id.* at 393.

Mr. Maez's case is no different. Even if his appointment was defective in some way, the fact that he served as Marshal for fifteen years and was treated as such by everyone in the Village, makes him a de facto appointed official. Mr. Maez acted as an

appointed official and received all the benefits of the position.  Furthermore, we stress that on appeal he does not raise an estoppel argument; that is, he does not claim that he was ever assured he could only be fired for cause or the like.

Because Mr. Maez has failed to designate specific facts showing there is a genuine issue for trial, the district court was correct to grant the defendants' summary judgment on Mr. Maez's procedural due process claim.  The judgment of the district court is **AFFIRMED.**

ENTERED FOR THE COURT


John C. Porfilio
Circuit Judge