2005-NMSC-037

124 P.3d 210

**In the Matter of the Request for Recalls of Gadsden Independent Public Schools Board Members.**

**DOÑA ANA COUNTY CLERK, Robert Duane Frizell, individually and as representative of Recall, David J. Garcia, Florentino Silva, and Santiago Burciaga, Appellees,**

v.

**Gregg MARTINEZ, Luz Vargas, Fred Garza, and James Dino Anastasia, Appellants.**

No. 29,480.

Supreme Court of New Mexico.

Nov. 21, 2005.

Walsh, Anderson, Brown, Schulze & Aldridge, P.C., Charles D. Noland, Elena Martinez Gallegos, Albuquerque, NM, for Appellants.

Thomas R. Figart, Las Cruces, NM, for Appellee Doña Ana County Clerk.

Scott, Hulse, Marshall, Feuille, Finger & Thurmond, P.C., Robert Duane Frizell, El Paso, TX, for Appellees RECALL, Garcia, Silva, & Burciaga.

Robert Duane Frizell El Paso, Texas Pro Se Appellant.

## OPINION

PER CURIAM.

{1} This appeal arises from a Doña Ana County school board member recall election held on November 15, 2005. Appellants Gregg Martinez, Luz Vargas, Fred Garza, and James Dino Anastasia ("the Named Board Members") are four of the five school board members for the Gadsden Independent School District ("GISD"). Appellees Robert Duane Frizell, individually and as representative of RECALL,[1] David J. Garcia, Florentino Silva, and Santiago Burciaga (the "RECALL Petitioners") are a group of voters in the GISD boundaries and members of RECALL. The Doña Ana county clerk is also an appellee.

{2} The Named Board Members are appealing two district court orders, which allowed the recall election at issue to proceed. The RECALL Petitioners brought this matter before the district court, pursuant to the Local School Board Member Recall Act. *See* NMSA 1978, § 22–7–1 (1977). They alleged that the Named Board Members engaged in malfeasance by violating the Open Meetings Act, *see* NMSA 1978, § 10–15–1.1 (1989), and by violating legislation identified as House Bill 212. *See, e.g.,* NMSA 1978, §§ 22–5–4 (2003, prior to subsequent amendments), 22–5–14 (2003). In the first order, pursuant to NMSA 1978, § 22–7–9.1 (1987), the district court found that sufficient facts existed to allow the recall process to continue, on the basis of Open Meetings Act violations and violations of House Bill 212, although the court required modifications in the statement of the charges. In the second order, pursuant to NMSA 1978, § 22–7–12 (1985), the district court concluded that the failure to circulate petitions in Spanish as well as English did not invalidate any signatures. The district court also found that the RECALL Petitioners had gathered a sufficient number of valid signatures. Finally, the district court ruled the statement of the charges was sufficient to support a recall election. The county clerk issued and published its proclamation for the recall election. Absentee voting began on October 21, 2005 and ran until November 11, 2005.

{3} The Named Board Members filed their Notice of Appeal on September 29, 2005. Additionally, they filed a motion to stay the recall election process pending appeal. The district court denied the motion to stay and this Court granted an expedited appeal, pursuant to the request of the RECALL Petitioners and the county clerk. Following oral arguments, this Court also denied the Named Board Members' request for a stay pending the appeal. We now address the issues raised on appeal.

{4} The issues raised on appeal are as follows: 1) whether the charges as stated in the petitions and supporting affidavits were sufficient to allow the recall efforts to proceed; 2) whether the RECALL Petitioners' motives for initiating the recall election were purely political and personal; 3) whether the district court erred by not considering the Named Board Members' evidence; 4) wheth-

---

1. RECALL stands for "Rectify Educational Concerns about Lousy Leaders."

er the county clerk and/or the RECALL Petitioners' failure to provide petitions in both Spanish and English violated Section 22–7–6(C)'s requirement that "[a]ll information written on the petition form shall be in compliance with the federal Voting Rights Act of 1965, as amended;" and 5) whether evidence of canvasser irregularities and misrepresentations in obtaining signatures on the recall petitions were sufficient to invalidate all petitions submitted as a matter of law. We view the first and second issues as a single challenge to the sufficiency of the charges: whether the RECALL Petitioners were entitled to have the voters decide whether to recall the named Board Members under *CAPS v. Board Members,* 113 N.M. 729, 832 P.2d 790 (1992).

{5} The Named Board Members have argued that there was an insufficient factual basis for a determination they acted with an improper or corrupt motive as required by *CAPS.* While we recognize this Court referred to the requirement of an "improper or corrupt motive," *see id.,* 113 N.M. at 730, 832 P.2d at 791 (quoting *Arellano v. Lopez,* 81 N.M. 389, 392, 467 P.2d 715, 718 (1970)), we were analyzing a discretionary act. *See CAPS,* 113 N.M. at 730, 832 P.2d at 791. In *CAPS,* it was undisputed "that the selection, by a local school board, of a site for a new school is a discretionary act within that board's scope of authority." *Id.* In this case, the charges are not that discretionary acts were wrongful, but rather that the Named Board Members acted outside their authority. The challenge raised in the first two issues by the Named Board Members is whether the charges were legally sufficient to show malfeasance. The reference in *CAPS* to motive is not applicable.

■■■ {6} The RECALL Petitioners' charges of Open Meetings Act violations and of House Bill 212 violations, if true, provided a sufficient legal basis for the recall process. If multiple intentional violations of the Open Meetings Act occurred, and those violations permitted policy decisions concerning the respective roles of the Superintendent and the school board to have been made without public participation, then those violations were a form of misconduct for which recall was pro-

vided. *See* N.M. Const. art XII, § 14 ("A petition for a recall election must cite grounds of malfeasance or misfeasance in office or violation of the oath of office by the member concerned."). The district court had a sufficient factual basis to support the charges that the Open Meetings Act had been violated on more than one occasion and that the violations involved decisions contrary to the Legislature's intent represented by statutes such as Sections 22–5–4 and 22–5–14. Finally, there was a factual basis to conclude that the violations, if they occurred, were knowing. Therefore, even if animosity and conflict exist between the RECALL Petitioners and the Named Board Members, it does not appear that the RECALL Petitioners' sole reason for employing the recall was as "a means of harassment or for purely political or personal purposes." *CAPS,* 113 N.M. at 731, 832 P.2d at 792.

{7} For example, on April 25th, Board Member Maria Saenz wrote a letter to President Luz Vargas expressing Saenz's concern that the GISD School Board violated the Open Meetings Act and House Bill 212 in their April 14th closed session. Ms. Saenz alleged that the board violated the Open Meetings Act by discussing subjects other than those announced or voted upon prior to closure. Ms. Saenz contends that the board did not vote for Ms. Vargas and Mr. Anastasia to proceed to tell Superintendent Ronald Haugen "how to do his job in relation to how he handles his personnel and what people he needs to fire[ ]." In addition, Ms. Saenz stated that at approximately 9:50 p.m. she asked Ms. Vargas whether anything else needed to be discussed because it was getting late. Ms. Vargas said there was nothing further to discuss, so Ms. Saenz left. A few days later, Ms. Saenz learned that the Named Board Members continued to discuss business matters after she left, including a personnel issue, with Mr. Haugen. Ms. Vargas gave Mr. Haugen a letter requiring him to respond to his actions about a previous employee. Ms. Vargas also handed Mr. Haugen a letter dated April 13th, signed by four board members, to restrict Mr. Haugen's out-of-state travel. Ms. Saenz alleged that this written directive "should have been voted upon at an open meeting." In addition, Ms. Saenz

claimed that the letter given to Mr. Haugen was "invalid" pursuant to NMSA 1978, Section 10–15–3 (1997). Ms. Saenz's letter was addressed to Ms. Vargas, and copies were sent to the other board members and Mr. Haugen. The letter put all the Named Board Members on notice that Board Member Saenz was concerned about possible Open Meetings Act violations and House Bill 212 violations. Similarly, Mr. Haugen wrote a letter to Ms. Vargas on April 22nd, which also expressed his concerns about the April 14th meeting. That letter was also sent to all the board members.

{8} Further, the alleged violations that occurred in the April 14th closed session and the alleged violations that occurred after Ms. Saenz left the April 14th closed session were not isolated events. Mr. Haugen wrote a second letter to the board members on May 8th, expressing his concern that Mr. Anastasia violated House Bill 212 by threatening a principal within the district that it would be in his best interest to reinstate the assistant principal. In the May 12th closed session, Ms. Vargas, Mr. Anastasia, and Mr. Martinez placed Mr. Haugen on paid administrative leave effective immediately. Mr. Haugen alleged that Mr. Anastasia informed him that the reason that he was being placed on administrative leave for insubordination was because he "did not fire an employee as directed and because [he] did not follow a directive [he] was given to not take any personnel actions whatsoever." "[N]either the notice nor the agenda for the meeting on May 12, 2005 gave any indication that the School Board would take any such action."

{9} Although Ms. Vargas, Mr. Anastasia, and Mr. Martinez attempted to rectify their actions after placing Mr. Haugen on administrative leave by getting a recorder and recording the motions made, the motions made and recorded were still conducted in a closed meeting. The limited personnel exception to the Open Meetings Act does not "exempt final actions on personnel from being taken at open public meetings." NMSA 1978, § 10–15–1(H)(2) (1999). There is no indication that the three members informed the public that it would reconvene its open session after the closed session. Therefore, the

district court was entitled to conclude there was evidence of final actions having been taken in a closed session, knowingly contrary to the Open Meetings Act and to Sections 22–5–4 and 22–5–14.

{10} The third issue is whether the district court erred in not considering the Named Board Members' evidence at the second hearing. The district court denied the Named Board Members' challenge pursuant to Section 22–7–12(A)(3), ruling that sufficient facts had been alleged to support the charges for violations of the Open Meetings Act and violations of House Bill 212. In doing so, the district court stated that "the Court's review of this matter in this appeal is limited to 'the sufficiency of the charge'; therefore, for this matter, the Court only reviews the evidence that was part of the record in Cause No. MS–2005–01." Section 22–7–9.1(C) supports the district court's conclusion.

{11} We conclude, under Sections 22–7–9.1 and 22–7–12, the district court was limited in the second hearing to reviewing the evidence presented by the RECALL Petitioners in the first hearing. Section 22–7–9.1(C) provides that "[u]pon review of the completed face sheet together with affidavits submitted by the petitioner setting forth specific facts in support of the charges specified on the face sheet," the district court shall determine "whether sufficient facts exist" to permit the recall process to continue. The statute does not invite counter-affidavits. The district court was not required to weigh disputed issues of fact. Section 22–7–12(A) limits challenges in the second hearing. Under Section 22–7–12(A)(3), the district court was required to determine the Named Board Members' challenges to "the sufficiency of the charge." We are not persuaded the district court erred in construing Section 22–7–12(A)(3) as requiring only a reconsideration of the evidence offered at the first hearing.

{12} The fourth issue raised by the Named Board Members is whether the recall petitions should have been printed and circulated in both Spanish and English, pursuant to Section 22–7–6(C), which requires "[a]ll information written on the petition form [to] be in compliance with the federal Voting Rights

Act of 1965, as amended." The district court determined that failure to have petitions in Spanish did not invalidate the petitions. We note the county clerk has contended that the "initiative petitions are not *voting materials* that fall within the ambit of the Voting Rights Act requiring minority language treatment." (emphasis in original).

{13} We do not address the clerk's contention because the Named Board Members lack standing to challenge the petitions on the basis they did not circulate in Spanish as well as English. "[S]tanding is a doctrine requiring that the claimant must have a personal stake in the outcome of a case; the claimant must allege both injury in fact and a traceable causal connection between the claimed injury and the challenged conduct." *Key v. Chrysler Motors Corp.*, 1996–NMSC–038, 121 N.M. 764, 768, 918 P.2d 350, 354. The Named Board Members clearly have a stake in the outcome of this case, but they have failed to articulate any injury arising from the failure to circulate the petitions in Spanish.

{14} The only evidence of harm appears to be that two women who only understood Spanish signed petitions without being shown any documents in Spanish. These women do not contend that had they been given petitions in Spanish, they would not have signed them. Rather, they simply indicate that they were never given a Spanish document to read. It is plausible that the two women would not have signed the petitions had they been in Spanish. However, it is equally plausible that the RECALL Petitioners could have collected an even greater number of signatures than they did if the petitions were circulated in both Spanish and English.

{15} Even if the Named Board Members could demonstrate an "injury in fact and a traceable causal connection" to the challenged conduct, they must also show that "the interest sought to be protected ... is arguably within the zone of interests to be protected or regulated by the statute." *Key*, 1996–NMSC–038, 121 N.M. at 768, 918 P.2d at 354 (quoting 12 James W. Moore, *Moore's Federal Practice*, ¶ 300.02[2–3], at 1–16 (2d ed.1995) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153,

90 S.Ct. 827, 25 L.Ed.2d 184 (1970))). We are not persuaded the New Mexico Legislature intended to permit local school board members facing a recall election the opportunity to challenge the form of the petition under Sections 22–7–9.1 or 22–7–12. Neither Section 22–7–9.1 nor 22–7–12 specifically authorize a challenge to the form of the petition. We believe the Legislature intended the county clerk, in cooperation with the Secretary of State, would ensure that the materials provided voters would comply with the law and the remedy for non-compliance would be available elsewhere. For example, the Local School Board Members Recall Act provides that a petitioner may apply to district court "for writ of mandamus to compel the performance of [a] required act." *See* NMSA 1978, § 22–7–15 (1985)

{16} The final issue raised on appeal also provides no basis for relief. The Named Board Members' evidence of canvasser irregularities was insufficient to invalidate any of the petitions as a matter of law. The Named Board Members produced evidence showing that at most, there were some procedural irregularities with respect to three of the 1266 signatures obtained. The three signatures at issue do not change the result because the canvassers collected more signatures than required for each Named Board Member. Therefore, even if the challenged signatures were invalid, the error was harmless. There was still a sufficient number of valid signatures for the recall election against each Named Board Member.

{17} For these reasons, we affirm the district court's order filed September 23, 2005.

{18} **IT IS SO ORDERED.**

RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and EDWARD L. CHÁVEZ, Justices, concur.