■ The People of the State of New York, Appellant, v Jose Pimentel, Respondent.

At approximately 4:00 A.M. on March 31, 1986, Police Officer Mitchell Smith and his partner, Officer Bavaro, responded to a radio communication reporting a man with a gun in front of a restaurant at 170 Dyckman Street in Upper Manhattan. Upon arriving at the location, the officers saw two men arguing with defendant. The men, who told the officers they had called the police, accused defendant of having threatened them with a gun. The officers conducted a pat down of defendant which did not yield a weapon. They then entered the restaurant, which defendant claimed belonged to a relative of his, to look around. Officer Smith went into the restroom and poked through the wastepaper basket, but did not find a weapon. Unable to substantiate the claim that defendant was, or had been, in possession of a gun, the officers returned to their patrol.

Approximately 15 minutes later, the officers drove past the restaurant again. Defendant, who was outside and standing alone, looked in their direction and then suddenly ran into the restaurant. Because Officer Bavaro had "observed a handgun" in defendant's pocket, the officers drew their guns and followed defendant into the restaurant and back toward the restroom. Just as the officers reached the restroom door, defendant was exiting. Officer Smith grabbed him and handed him over to Officer Bavaro, who frisked him. Smith went into the restroom, where defendant had been for no more than a few seconds, and looked around. Lying on top of papers in the waste basket was a revolver. Smith recovered it, and defendant was placed under arrest.

As defendant was being led from the restaurant, and prior to the administration of *Miranda* warnings, he stated to the police officers, "I had to protect my family, bro". On route to the precinct, defendant repeatedly denied that the gun was his. No comments or questioning by the officers preceded these statements.

Defendant was indicted for criminal possession of a weapon in the third degree. Prior to trial, he made a written motion to suppress statements, alleging, *inter alia,* that he had been unlawfully arrested and subjected to custodial interrogation without benefit of *Miranda* warnings.

At a *Huntley* hearing held on August 26, 1986, the People presented Officer Smith to testify regarding the circumstances under which defendant made the statements. Officer Smith's

testimony included reference to Officer Bavaro's observation of a gun in defendant's pocket. Defense counsel objected to this evidence on the ground that it was inadmissible hearsay, an objection which was sustained by the court. Upon cross-examination defense counsel elicited the same information.

Fully crediting Officer Smith's testimony, the hearing court granted the motion to suppress statements, holding that defendant had not been accorded his *Miranda* rights and, further, that his arrest had been effected without probable cause. Having found that the arrest was unlawful, the court proceeded to *sua sponte* suppress the weapon, in addition to the statements, as the product of an unlawful arrest. We reverse both suppression determinations.

Initially, we observe that it was improper for the court to *sua sponte* suppress the weapon, which was neither the subject of defendant's motion to suppress nor of his argument at the conclusion of the suppression hearing. Pursuant to CPL 710.60 (1), a suppression motion "must be in writing and upon reasonable notice to the people and with opportunity to be heard". In the case at bar, however, the People were not prejudiced by the lack of notice, since the legality of the arrest was in issue with respect to the statements, and the People were therefore prepared to establish the appropriateness of the police action. We note, however, that had the People been aware of the court's intention to consider suppression of the weapon, they may very well have produced Officer Bavaro to testify as to his observation of a gun in defendant's pocket upon returning to the scene after the initial encounter. In any event, this evidence was adduced at the hearing, and is part of the record. To the extent that the court discounted Officer Smith's testimony regarding Bavaro's observation as inadmissible hearsay, this was error, for hearsay is admissible in a hearing on a motion to suppress. (CPL 710.60 [4].) Moreover, defense counsel also elicited this information on cross-examination.

With respect to the suppression of the weapon, we find that the police officers' actions were justified. The officers received a report of a man with a gun at the location and, upon responding, spoke with two complainants who stated that defendant had threatened them with a gun. Fifteen minutes later, the officers returned to the location and Officer Bavaro observed a gun in defendant's pocket, providing the officers with sufficient information to conclude that a crime was being committed, and establishing probable cause to arrest defendant. *(People v McRay,* 51 NY2d 594, 602.) In light of the

evidence of the commission of a crime, defendant's flight immediately upon seeing the officers was a further important factor in determining the existence of probable cause. *(People v Howard,* 50 NY2d 583, 592.)

With respect to the statements, which were the subject of defendant's motion to suppress, our determination that the arrest was a lawful one nullifies the "tainted fruit" basis for suppression. We find, in addition, that the statements were spontaneously made in the absence of inducement, coercion or interrogation, and are therefore admissible despite the absence of *Miranda* warnings. *(See, People v Howard,* 60 NY2d 999.)

Accordingly, the order appealed from is reversed, and the matter remanded for further proceedings. Concur—Kupferman, J. P., Sullivan, Asch, Kassal and Ellerin, JJ.