IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2025-NMSC-008

Filing Date: November 18, 2024

No. S-1-SC-39474

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

JESSICA VASQUEZ,

      Defendant-Appellee.

CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS
Melissa A. Kennelly, District Judge

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
James W. Grayson, Chief Deputy Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellee

OPINION

THOMSON, Chief Justice.

## I.      INTRODUCTION

**{1}** This Court has recognized that "[f]reedom from illegal search and seizure is a fundamental right." *State v. Vargas*, 2017-NMSC-029, ¶ 14, 404 P.3d 416 (internal quotation marks omitted) (quoting *State v. Gomez*, 1997-NMSC-006, ¶ 31 n.4, 122 N.M. 777, 932 P.2d 1).

**{2}** A district court judge in rural New Mexico noticed a pattern of warrantless searches and seizures throughout her docket, where the resulting evidence formed the basis for the State's prosecution. In New Mexico, a warrantless search is presumptively unconstitutional and subject to rebuttal by the State, yet there appeared to be a clear failure by trial counsel to challenge how the evidence was obtained. The district court (on its own) filed a series of orders setting suppression hearings in thirty cases.

**{3}** Thirteen of these cases were proactively dismissed (nolle prosequi) by the prosecution before the district court reached a determination on suppression. The justifications provided by the prosecution reveal the origin of the district court's concerns including dismissal because of a "[K]afkaesque arrest for an unnamed charge and subsequent search and retrieving of evidence" that made "no justifiable sense." Nolle Prosequi, *State v. Alex Kolb*, D-809-CR-2020-00124 (8th Jud. Dist. Ct. Sept. 17, 2021). Other reasons provided by the prosecution for dismissal were less trenchant but equally troubling. Nolle Prosequi, *State v. Coy Cleburn*, D-809-CR-2020-00186 (8th Jud. Dist. Ct. Sept. 17, 2021) ("[T]he incident was an arguably bad search."); Nolle Prosequi, *State v. Patrick Gonzales*, D-809-CR-2020-00149 (8th Jud. Dist. Ct. Sept. 17, 2021) ("[T]he law enforcement officer threatened to impound the vehicle if the owner of the vehicle did not consent to the search."); Nolle Prosequi, *State v. Rosa Vigil*, D-809-CR-2019-00116 (8th Jud. Dist. Ct. Sept. 17, 2021) ("[T]he search of the vehicle incident to arrest is not justified by facts and neither was the opening of the draw string bag."); Nolle Prosequi, *State v. Christian Ortega*, D-809-CR-2020-00152 (8th Jud. Dist. Ct. Sept. 17, 2021) ("[T]he law enforcement investigative officers made arguably inconsistent reports as to how they received permission to enter the residence."). Ultimately, evidence was suppressed in six of the remaining seventeen cases, including the nameplate case.

**{4}** This Court must determine whether a district court may sua sponte raise the issue of suppression through an order for a suppression hearing. The issue framed in this certified matter is similar to that described by Justice Cardozo in *People v. Defore*, 150 N.E. 585, 589 (N.Y. 1926), while he sat on New York's high court: "The question is whether protection for the individual would not be gained at a disproportionate loss of protection for society. On the one side is the social need that crime shall be repressed. On the other, the social need that law shall not be flouted by the insolence of office." For this case, through six questions from the State, certified to this Court by our Court of Appeals, we consider the overarching question in the context of (1) standing, (2) jurisdiction, (3) separation of powers, (4) ineffective assistance of counsel as a recourse, (5) bias, and (6) particularity requirements for a court's order for a suppression hearing. The Certification Order asserts that "the suppression order [for this case] detail[s] the district court's reasoning for identifying and raising suppression concerns in numerous cases and is representative of the [six] cases certified to [this] Court."[1]

---

[1] Although the Court of Appeals certified six cases under Rule 12-606 NMRA, we accepted certification on only one. The Court directed the Court of Appeals to hold the remaining five cases, and any other cases that raise substantially the same issue(s), in abeyance, pending the Court's disposition of this matter.

## II.    BACKGROUND

**{5}**    In this case, there was a warrantless search of a home. A search warrant was subsequently obtained with a probable cause foundation that was partially based on the original warrantless search. The district court sua sponte ordered a suppression hearing and, after a hearing and briefing from both parties, entered an Order Suppressing Evidence (Suppression Order), finding that Defendant "*Was Unlawfully Coerced into Giving Police Consent to Enter Her Home, and Police Were Not Justified in Entering Her Home Under the Emergency Assistance Doctrine.*"[2] The State appealed the suppression of the evidence to the Court of Appeals. The Court of Appeals, in turn, certified the case to this Court.

**{6}**    In the Order setting briefing, this Court instructed the parties to file briefs to "address the issues articulated in the certification order" in accordance with our rules governing briefing. See Rule 12-318(A)(4)-(5) NMRA (requiring that a brief in chief include an argument for each issue that provides the applicable standard of review, applicable authority, and a conclusion containing a precise statement of the relief sought).

**{7}**    The State did not comply with the certification instructions in that its briefing only fully addresses two of the six questions on certification that sought to explore the authority of the district court to act as it did. The State discussed the district court's lack of standing (Question One) or jurisdiction (Question Two) to order a suppression hearing on its own and absent a request by Defendant. The State briefly discussed bias (Question Five), citing only the Code of Judicial Conduct, failing to elaborate and neglecting to provide either support for its allegation of bias or a suggested remedy to any harm resulting from alleged bias. Significantly, the State did not brief this Court on the remaining three questions: separation of powers (Question Three), ineffective assistance of counsel as a recourse (Question Four), and particularity requirements for a court's sua sponte order for a suppression hearing (Question Six). Therefore, we deem these arguments waived. See Rule 12-318(A)(4) (requiring parties to "set forth a specific attack . . . or the finding shall be deemed conclusive").

**{8}**    Despite incomplete briefing, we address the legal questions presented on certification for the benefit of the Court of Appeals—to whom we remand this certified case—for its own review and determination consistent with this opinion.

## III.    DISCUSSION

### A.    Certified Question One: Did the district court lack jurisdiction to sua sponte raise the suppression issue because it was not "aggrieved" by the alleged violation of rights?

**{9}**    No. We hold that a court does not have to be an aggrieved party to raise the issues surrounding a warrantless search and to order a hearing and briefing to address

---

2The State discusses the merits of the district court's suppression of the evidence at length. This matter was not presented for our review and is most appropriately reviewed by the Court of Appeals on remand.

the issues.[3] The State raises standing, arguing that the district court "improperly disregarded Defendant's initial burden of production" by initiating a suppression hearing when it was not an aggrieved party. The State's argument is inconsistent with existing standing jurisprudence. We review whether Rule 5-212(A) NMRA imputes a defendant's requirement of standing to district courts to sua sponte raise suppression issues de novo, and we and conclude it does not. *See* Rule 5-212(A) ("A *person* aggrieved by a search and seizure may move for the return of the property and to suppress its use as evidence." (emphasis added)); *see also Allen v. LeMaster*, 2012-NMSC-001, ¶ 11, 267 P.3d 806 ("The proper interpretation of our Rules of Criminal Procedure is a question of law that we review de novo.").

{10}    First, standing relates to a litigant's right to raise an issue and requires a showing of the litigant's "personal stake in the outcome of a case." *Doña Ana Cnty. Clerk v. Martinez*, 2005-NMSC-037, ¶ 13, 138 N.M. 575, 124 P.3d 210 (quoting *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 11, 121 N.M. 764, 918 P.2d 350 (internal quotation marks omitted)). In the context of the Fourth Amendment to the United States Constitution, standing "captur[es] the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 584 U.S. 395, 410 (2018). In New Mexico, "one must be the victim of the search in the sense that one's right of privacy was invaded." *State v. Torres*, 1970-NMCA-017, ¶ 23, 81 N.M. 521, 469 P.2d 166. Thus, standing in this context applies to an *individual* seeking the vindication of a *personal* right violated by the government's acts; therefore, standing is not an obstacle to a court ensuring that constitutional processes are followed in the course of the prosecution. Rule 5-212(A) comm. cmt. ("The aggrieved person under Paragraph[] A . . . of this rule is the person who has standing to raise the issue.").

{11}    The State contends that the district court lacked authority under Rule 5-212(A) to order a suppression hearing on its own motion because it is not an "aggrieved" party. The State interprets Rule 5-212(A) as conferring standing only to parties affected by the alleged rights violation. However, the State appears to confuse the authority of a court with the requirement that a litigant must have standing to bring a particular claim. A court does not have to be an aggrieved party to ask for analysis on an apparent constitutional infirmity that resulted in evidence that forms the basis of the prosecution against the accused. Rule 5-212(A) does not suggest that *only* aggrieved persons may move for suppression of evidence. The Rule is silent as to whether a court may initiate a hearing on its own motion, and the State fails to provide any authority that the standing requirement in this rule applies to the court. Further, the district court is not initiating a hearing to vindicate a right for its benefit, but for the right of Defendant, who has standing to contest the warrantless search.

---

3This opinion in no way compels a court to attempt to identify or address such issues. We do not impose an obligation to identify or address the issues; we simply acknowledge a court's authority to do so. While it may be prudent for a Rule of Criminal Procedure to guarantee that all evidence seized in a presumptively unconstitutional search be subject to a suppression hearing, we have not yet promulgated such a rule.

**{12}** Second, accepting the State's logic would preclude sua sponte appellate review in other contexts where no formal statutory grant of authority exists. For example, this Court has noted, "[A]s a general rule, propositions of law not raised in the trial court cannot be considered sua sponte by the appellate court." *State v. Jade G.*, 2007-NMSC-010, ¶ 24, 141 N.M. 284, 154 P.3d 659 (internal quotation marks and citation omitted). However, there are "exceptions to that rule . . . [including] where it is necessary . . . to protect the fundamental rights of the party." *Id.* (internal quotation marks and citation omitted). These exceptions are *not* founded in statute. Thus, the State's reasoning would suggest that absent a grant by statute or rule, an appellate court would not have authority to review an issue not presented by the parties.

**{13}** Finally, the State's argument does not consider that district courts are conferred authority under Article VI of the New Mexico Constitution, which provides that district courts are courts of "original jurisdiction in all matters and causes not excepted in [the New Mexico Constitution], and such jurisdiction of . . . proceedings as provided by law." N.M. Const. art. VI, § 13; *Smith v. S. Union Gas Co.*, 1954-NMSC-033, ¶ 10, 58 N.M. 197, 269 P.2d 745 ("[T]he district court gets its jurisdiction from the [New Mexico] Constitution."). The State's discussion focuses solely on jurisdiction as established through statute under Rule 5-212(A), although the State acknowledges that "[a] court's jurisdiction derives from a statute *or constitutional provision*." *State v. Rudy B.*, 2010-NMSC-045, ¶ 14, 149 N.M. 22, 243 P.3d 726 (emphasis added). As this Court has noted, "There is a presumption of jurisdiction, in the absence of proof to the contrary, in courts of general jurisdiction." *Marchman v. NCNB Tex. Nat'l. Bank*, 1995-NMSC-041, ¶ 27, 120 N.M. 74, 898 P.2d 709. Therefore, the district court did not lack jurisdiction because a court does not have to meet the standing requirements under Rule 5-212(A), and a district court has adequate constitutional authority to order a suppression hearing on its own motion.

**B.      Certified Question Two: Did the district court lack jurisdiction to raise claims of constitutional violations in raising the suppression issue because the district court exists to decide issues presented to it?**

**{14}** No. We hold that district courts have inherent authority to raise the issue of suppression for warrantless searches. The State argues that the district court as the trier of fact "exist[s] to decide disputes presented to it, not to raise its own disputes" and therefore lacks jurisdiction to raise suppression issues sua sponte. This argument is unpersuasive for three reasons. First, the broad language in New Mexico case law does not limit to appellate courts the authority to sua sponte review violations of a defendant's fundamental rights. Second, a warrantless search and seizure is presumptively unreasonable and may implicate a defendant's fundamental rights. *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95; *see Vargas*, 2017-NMSC-029, ¶ 14 (acknowledging appellate courts' discretion to review unpreserved issues of illegal search and seizure involving parties' fundamental rights). Third, the district court did not engage in sua sponte decision making because the district court's action in raising the suppression issue initiated briefing and provided an opportunity for both parties to be heard. This Court reviews the district court's jurisdictional authority to initiate a suppression hearing de novo. *State v. Martinez*, 2022-NMSC-004, ¶ 5, 503 P.3d 313.

**{15}** To begin, the State fails to provide any argument for affording appellate courts the authority to sua sponte review violations of fundamental rights while simultaneously restricting the authority of district courts. The broad language in New Mexico case law does not reserve to appellate courts the authority of courts to sua sponte review violations of a defendant's fundamental rights. The district court's Suppression Order cites holdings that implicate the general authority of appellate and district courts to raise issues sua sponte. *Id.* ¶ 26 (acknowledging a district court's inherent authority to review sufficiency of the evidence on its own motion); *Vargas*, 2017-NMSC-029, ¶¶ 14-15 (affirming a Court of Appeals decision where it raised and decided a Fourth Amendment issue sua sponte without additional briefing).

**{16}** The holdings cited by the district court refer generally to "courts" or "judiciary" rather than to an "appellate court" specifically or by using other limiting language. *State ex rel. Quintana v. Schnedar*, 1993-NMSC-033, ¶ 3, 115 N.M. 573, 855 P.2d 562 ("There is no doubt that the *judiciary* has the inherent authority to guarantee the enforcement of constitutional civil liberty protections in criminal prosecutions." (emphasis added)); *State v. Cruz*, 2021-NMSC-015, ¶ 1, 486 P.3d 1 ("At every level of our *courts*, the Constitution must stand as an immovable bulwark to secure the rights of individuals in every case." (emphasis added)), *reh'g denied* (Apr. 23, 2021).

**{17}** For more than one hundred years this Court has recognized the authority of courts to act to protect a defendant's fundamental rights. *See State v. Garcia*, 1914-NMSC-065, ¶ 18, 19 N.M. 414, 143 P. 1012 (on motion for rehearing) ("There exists in every *court* . . . an inherent power to see that a man's fundamental rights are protected in every case." (emphasis added)). This Court recently confirmed this principle, providing that New Mexico's Rules of Criminal Procedure "are applied with an understanding of a *court's* 'inherent power to see that a [defendant's] fundamental rights are protected in every case' and that '[every] *court* has the power, in its discretion, to relieve [a defendant of the error] and to see that injustice is not done.'" *Martinez*, 2022-NMSC-004, ¶ 6 (alterations in original) (emphasis added) (quoting *State v. Cunningham*, 2000-NMSC-009, ¶ 12, 128 N.M. 711, 988 P.2d 176).

**{18}** New Mexico courts have inherent authority over a host of other matters. *Belser v. O'Cleireachain*, 2005-NMCA-073, ¶ 9, 137 N.M. 623, 114 P.3d 303 ("The district court has the inherent authority, in its discretion, to dismiss a case for failure to prosecute." (internal quotation marks and citation omitted)); *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶ 11, 120 N.M. 1, 896 P.2d 1148 ("[T]rial and appellate courts must have inherent power to impose a variety of sanctions on both litigants and attorneys." (internal quotation marks and citation omitted)). This power includes a district court's authority to raise various issues sua sponte. *See State v. Balderama*, 2004-NMSC-008, ¶ 20, 135 N.M. 329, 88 P.3d 845 ("[A] judge is not prohibited from excluding evidence sua sponte."); *see also Martinez*, 2022-NMSC-004, ¶ 1 (clarifying that a district court also has inherent authority to raise, on its own motion, issues of sufficiency of the evidence postverdict).

**{19}** Further expanding upon a district court's authority, this Court in *Grogan* held that a trial court may find ineffective assistance of counsel without providing the parties an

opportunity to be heard on the issue. *State v. Grogan*, 2007-NMSC-039, ¶ 1, 142 N.M. 107, 163 P.3d 494. Indeed, it seems incongruous to allow a court to both raise and decide a Sixth Amendment ineffective assistance of counsel issue without a hearing, like in *Grogan*, and not allow the same court to request a hearing and briefing to review a search by law enforcement that was, "'without prior approval by judge or magistrate, [and thus] per se unreasonable,' subject only to well-delineated exceptions." *Rowell*, 2008-NMSC-041, ¶ 10 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

{20}    Given the fact-intensive nature of a suppression hearing, the trial court is best situated to initiate a hearing and allow the parties the opportunity to cross-examine witnesses and introduce evidence. In addition, absent an objection to the search, a defendant's claim of error on appeal would be subject to appellate review under the strict standard of fundamental error or would risk the issue remaining unaddressed by appellate courts. *Vargas*, 2017-NMSC-029, ¶¶ 13-15; *see also State v. Varela*, 1999-NMSC-045, ¶¶ 11, 25, 128 N.M. 454, 993 P.2d 1280; Rule 12-321(A), (B)(2)(c) NMRA; Rule 5-212(C).

{21}    Finally, the district court did not engage in decision making without a full opportunity for the parties to present their argument. When there is a warrantless search, the State bears the burden to overcome the presumption that a warrantless search is unreasonable. *Rowell*, 2008-NMSC-041, ¶ 10. Here, the district court's actions allowed the prosecution the opportunity to meet its burden to demonstrate that the warrantless search was nevertheless reasonable. The district court held a thorough evidentiary hearing and requested follow-up briefing, which the State and Defendant provided. Only then did the district court make an evidentiary determination. Ultimately, requesting briefing and review is substantially distinct from and less problematic than sua sponte decision making where parties lack an opportunity to be heard. *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 760 F.2d 1347, 1365 (2d Cir. 1985) ("The district court has no authority to dismiss a complaint . . . without giving the plaintiff an opportunity to be heard."), *aff'd*, 476 U.S. 409 (1986).

{22}    Therefore, we hold that district courts have jurisdiction to raise the issue of suppression for warrantless searches. The district court did not tip the scale of justice; the court merely ensured its balance. *See State v. Crump*, 1981-NMSC-134, ¶ 11, 97 N.M. 177, 637 P.2d 1232 ("The trial judge is properly governed by the interest of justice and truth." (internal quotation marks and citation omitted)).

## C.    Certified Question Three: Did the district court's actions violate separation of powers?

{23}    No. The district court did not violate the separation of powers doctrine when it sua sponte raised the suppression issue. This Court reviews preserved constitutional claims de novo. *State v. Tafoya*, 2010-NMSC-019, ¶ 24, 148 N.M. 391, 237 P.3d 693. Article III, Section 1 of the New Mexico Constitution explicitly provides for the separation of powers of the legislative, executive, and judicial branches. Our jurisprudence acknowledges that "[t]he constitutional doctrine of separation of powers allows some overlap in the exercise of governmental function." *State ex rel. Clark v. Johnson*, 1995-

NMSC-048, ¶ 32, 120 N.M. 562, 904 P.2d 11 (internal quotation marks and citation omitted). "This common sense approach recognizes that the absolute separation of governmental functions is neither desirable nor realistic." *Id.*

{24}   "[T]he executive branch executes the laws." *N.M. Bldg. & Constr. Trades Council v. Dean*, 2015-NMSC-023, ¶ 7, 353 P.3d 1212. "[T]he judiciary has the power to *enforce* and interpret constitutional provisions." *State v. Brown*, 1998-NMSC-037, ¶ 61, 126 N.M. 338, 969 P.2d 313 (emphasis added). Indeed, it is "[t]he essence of judicial power [to have] final authority to render and enforce a judgment." *State ex rel. N.M. Jud. Standards Comm'n v. Espinosa*, 2003-NMSC-017, ¶ 13, 134 N.M. 59, 73 P.3d 197; *Bd. of Educ. of Carlsbad Mun. Schs. v. Harrell*, 1994-NMSC-096, ¶ 47, 118 N.M. 470, 882 P.2d 511. But neither execution nor enforcement are genuinely at issue here because the district court merely ordered briefing and a hearing for a presumptively unconstitutional search, requiring the State to meet its burden to prove reasonableness. The court's actions do not "prevent[ the executive] branch from accomplishing its constitutionally assigned functions," *State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶¶ 23, 25, 125 N.M. 343, 961 P.2d 768, unless the State alleges that it is acknowledged that one of these functions is to enter a house without a warrant. Further, ordering a hearing does not infringe on the defense counsel's role as advocate. Defendant here did not waive her Fourth Amendment protections, and if she had and the waiver was overridden by the district court, our analysis might be different.

{25}   For these reasons, the district court's order for a hearing and briefing on the suppression issue does not violate separation of powers.

**D.     Certified Question Four: Was the district court's only recourse to raise ineffective assistance of counsel against defense attorneys who failed to properly raise suppression issues?**

{26}   No. While ineffective assistance of counsel is a valid recourse, it is not the only one available to the district court. The State's briefing failed to develop an argument as to why the district court's inquiry into ineffective assistance of counsel was the only recourse available to the district court, and we hold the district court may exercise discretion in determining which recourse to pursue.

{27}   A district court's decision⌗whether to address indigent counsel's failure to properly move for suppression by issuing a sua sponte order for a suppression hearing or instead by inquiring into counsel's ineffective assistance⌗is reviewed for abuse of discretion. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Otto*, 2007-NMSC-012, ¶ 9, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted).

{28}   As noted by the district court's Suppression Order, a court may decide that ineffective assistance of counsel is not the appropriate recourse in rural areas where reassignment is "often futile" due to a limited number of attorneys or where prosecutorial pressure discourages defense attorneys from bringing suppression issues. Further, a district court may decline to pursue ineffective assistance of counsel as a recourse

because it is a claim "best addressed in a habeas corpus proceeding." *State v. Astorga*, 2016-NMCA-015, ¶ 25, 365 P.3d 53. We suggest a trial court may first take other intermediate steps, like instructing defense counsel that they are obligated to consult with a superior, before proceeding with a case ordering substitute counsel. Therefore, while ineffective assistance of counsel is a valid recourse, it is not the only one available to the district court, and a district court judge may exercise discretion as to which recourse to pursue.

### E. Certified Question Five: Did the district court's actions and statements demonstrate bias or create the appearance of bias?

**{29}** No. The district court's actions in sua sponte ordering a suppression hearing did not inherently implicate bias or the appearance of bias. We revisit this authority as framed by potential concerns for actual or apparent bias. The State argues the district court exhibited bias by stating that the warrantless search appeared to be unreasonable, thereby shifting the burden to the prosecution to prove the search was reasonable. Additionally, the State argues that there was either actual bias or the appearance of bias because the district court sua sponte raised suppression issues in thirty cases.

**{30}** Of the arguments raised in this proceeding, bias is the most concerning. We acknowledge that there are facts from the trial that warrant inspection. However, a series of procedural decisions hinder our review. First, the State did not raise the issue of bias before the trial court and, therefore, failed to preserve the claim for our review. *See S. Union Gas Co. v. Taylor*, 1971-NMSC-067, ¶ 11, 82 N.M. 670, 486 P.2d 606 (refusing to review claims of judicial bias that are not preserved in the record). We would typically review recusal or disqualification under an abuse of discretion standard, but no such request was made to the district court. *State v. Riordan*, 2009-NMSC-022, ¶ 6, 146 N.M. 281, 209 P.3d 773; *see also State v. Hernandez*, 1993-NMSC-007, ¶ 44, 115 N.M. 6, 846 P.2d 312 (holding that the judge's conduct did not implicate bias where the defendant did not raise a claim for bias "until after an adverse ruling"). Second, the State's briefing before this Court was sparingly developed, citing only the Code of Judicial Conduct. *See* Rule 21-102 NMRA. This Court does not address claims that are not thoroughly briefed or developed. *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (holding that the Court will not entertain unclear or undeveloped arguments); *see also* Rule 12-318(4)-(5) (prescribing details of the arguments and conclusion of an appellate brief in chief). Third and perhaps most important is failure of the State's briefing before this Court to make a specific request for relief based on the alleged bias and any grounds under which relief would be sought.[4] *See* Rule 12-318(4)-(5).

**{31}** We infer the State is implying that the district court's conduct amounted to either impropriety, impartiality, or both. Because there are other cases held in abeyance, we

---

4In a footnote, the State cites a dispositional order where this Court remedially remanded a proceeding to a pro tem judge, but the State does not explicitly suggest that a similar outcome is warranted here. Because the district court judge has since retired from judicial service, whether the State may request a pro tem judge is moot.

address the claim of bias as a matter of law and discuss the facts of this case only to the extent that we believe it can provide context to the Court of Appeals on remand.[5]

**{32}** A judge's objectivity is in issue when "an objective, disinterested observer, fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal." *Riordan*, 2009-NMSC-022, ¶¶ 11, 14 (brackets, internal quotation marks, and citation omitted). The "bias must be personal" to the case, *State v. Fernandez*, 1994-NMCA-056, ¶ 17, 117 N.M. 673, 875 P.2d 1104, and "[p]ersonal bias cannot be inferred from an adverse ruling," *Hernandez*, 1993-NMSC-007, ¶ 44. The metric for impartiality is whether an *objective, disinterested* observer would have doubts that justice could be served absent the judge's recusal. *See Riordan*, 2009-NMSC-022, ¶¶ 11, 14. Thus, while the district court may have sua sponte raised the issue of suppression, that alone is insufficient to prove bias.

**{33}** "The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated [the Code of Judicial Conduct] or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." Rule 21-102 cmt. (5). The district court's conduct here did not rise to the level of improper conduct as to violate Rule 21-102 of the Code of Judicial Conduct. To the extent the State argues that the district court judge was not impartial, "[t]he alleged bias and prejudice . . . must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 418, 96 N.M. 155, 629 P.2d 231 (internal quotation marks and citation omitted). An extrajudicial source "concerns the origin of the judge's bias rather than the place of its expression. . . . However, if a judge's statements or conduct during a trial refer to or reflect bias or prejudice . . . outside of [the judge's] judicial duties, then the extrajudicial source rule is satisfied and recusal may be required." *Id.* ¶ 421 n.159.

**{34}** As it relates to bias, we discuss (1) whether the district court inappropriately shifted the burden to the prosecution when it ordered a hearing to review the warrantless search and (2) whether the district court implicated bias by ordering suppression hearings across thirty cases. First, the district court's order for a suppression hearing, stating the warrantless search appeared to be unreasonable, did not shift the burden to the State to provide reasonableness of the search. Without prior approval by a judge or magistrate, a warrantless search is "per se unreasonable, . . . and the state bears the burden of proving reasonableness." *Rowell*, 2008-NMSC-041, ¶ 10 (internal quotation marks and citations omitted). Here, the affidavit clearly indicates that the initial search was conducted without a search warrant. Bias cannot be inferred solely from a judge's recognition of the constitutional norm: that the search was per se unreasonable, and the prosecution must prove the search was reasonable under one of the limited exceptions. *Rowell*, 2008-NMSC-041, ¶ 10. Here, the State makes no argument that the search was not presumptively unreasonable, only that it was justified

---

[5]We note that any determination on bias, outside of the common element that the district judge sua sponte moved for a suppression hearing, would require separate factual analysis for each of the cases held in abeyance. Therefore, even if briefing was sufficient to allow us to review the facts of this case, a bias determination in this case would not necessarily apply to the cases held in abeyance.

"under the emergency assistance doctrine" exception which, the district court ultimately held, did not "justif[y] the officers' warrantless entry."

**{35}** Second, regarding the district court's statement that there was a systemic "pattern and practice by *one municipal police department* of violating indigent citizens' right to be free from unreasonable search and seizure" (emphasis added), we acknowledge that this does not carry with it the ideal of neutrality. However, the State did not rebut this statement, and our review of other cases where the judge sua sponte raised the suppression issue does suggest a pattern of violation.

**{36}** Additionally, the State's Docketing Statement claims that the "district court has suppressed in [one-hundred percent] of the cases in which it filed Hearing Orders and. . . that the State did not dismiss." While this fact is more suggestive of bias, it does not reach the required threshold of impartiality. There is no evidence suggesting the actions of the district court in ordering the review of thirty cases (representing twenty percent of the district court judge's criminal docket) reflect the type of pernicious dishonesty Rule 21-102 is meant to address. *Heeter v. Heeter*, 1992-NMCA-032, ¶ 15, 113 N.M. 691, 831 P.2d 990 ("This [C]ourt will not search the record to find evidence to support an appellant's claims.").

**{37}** We recognize the importance of a judge being a neutral third party and the importance of the effects the appearance of bias can have on the judiciary. We also recognize "a court's inherent power to see that a defendant's fundamental rights are protected in every case." *Martinez*, 2022-NMSC-004, ¶ 6 (brackets, internal quotation marks and citation omitted). This is especially true in environments where vulnerable populations experience repeated and unaddressed constitutional violations. Limiting the appearance of bias, even when defending fundamental rights, is paramount to maintaining judicial integrity. This holding does not create a duty or incentivize courts to "sally forth each day looking for wrongs to right." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (citation omitted). Our holding is limited to a district court's authority to order a suppression hearing when a presumptively unconstitutional search or seizure is at issue.[6] On the one hand, "a judge should exercise this authority sparingly . . . [and] should be careful to avoid the appearance of being more of an advocate or partisan than an objective jurist." *Balderama*, 2004-NMSC-008, ¶ 20 (recognizing a trial judge's authority to exclude evidence sua sponte). However, we also note that our holding should not be read as creating a rule that restricts the inherent authority of courts to raise suppression issues only in isolated contexts, allowing systemic abuses to persist due to their repetitive nature.

**F.      Certified Question Six: Did the district court err in entering suppression orders based on evidence presented at the hearing because the initial**

---

[6]This authority does not extend to a sua sponte challenge of a search issued with a warrant, which is presumptively reasonable. In its Hearing Order, the district court appears to prejudge a presumptively reasonable search with a warrant. This error may justify the designation of a pro tem judge in similar cases. However, as previously noted, the suggested remedy of a pro tem appointment may not be applicable to these cases where the judge has resigned.

**hearing orders lacked particularity and the State was therefore unable to adequately prepare?**

**{38}**    No. The district court's Hearing Order provided sufficient particularity to notify the State and allow the State to adequately prepare for the hearing. The State argued that the district court's Hearing Order included a "generalized allegation of a rights violation" that did not satisfy the particularity normally required in an aggrieved party's motion to suppress and thus greatly disadvantaged the State, who was "unable to adequately prepare for the hearing." Contrary to Rule 12-318 (4)-(5), the State's Brief in Chief did not provide the applicable standard of review, the relevant authority, or the relief sought. As a result, we only address the legal question of the level of particularity required for a district court's sua sponte order for a suppression hearing.

**{39}**    We review the particularity requirements for a sua sponte order for a suppression hearing de novo. *See LeMaster*, 2012-NMSC-001, ¶ 11 (requiring de novo review of questions on proper interpretation of the New Mexico Rules of Criminal Procedure). Requirements for a motion to suppress are outlined in Rule 5-212. Further, Rule 5-120(A) NMRA provides that a written motion "shall state with particularity the grounds therefor, and shall set forth the relief or order sought." New Mexico case law has held a defendant's motion to suppress to this standard. *See State v. Goss*, 1991-NMCA-003, ¶ 13, 111 N.M. 530, 807 P.2d 228. This requirement is based on the need for "specificity in the statement of [a] defendant's legal theory." *Id.* (citation omitted). The Court of Appeals has interpreted this particularity requirement to indicate "a motion claiming 'there was no probable cause to arrest' could be sufficient." *State v. Esguerra*, 1991-NMCA-147, ¶ 17, 113 N.M. 310, 825 P.2d 243 (internal quotation marks and citation omitted).

**{40}**    Rule 5-121 NMRA, which governs a district court's preparation and entry of orders, does not mandate a requirement of particularity. However, this Court has previously held a trial judge to the standards of counsel where a trial judge sua sponte excluded evidence during a trial. *Balderama*, 2004-NMSC-008, ¶ 20 ("Our rules of evidence require no less of counsel who object to the admissibility of evidence, . . . and we see no reason why the same procedural rules should not apply to a trial judge who seeks to exclude evidence sua sponte."). The *Balderama* Court explained the purpose of imputing such a requirement, which permits the district court to "afford the proponent of the evidence a fair opportunity to respond to the court's concerns and to make the necessary offer of proof prior to the sua sponte ruling." *Id.*

**{41}**    Here, where a district court judge sua sponte orders a suppression hearing, the State cannot avail itself of the benefit of particularity that it would have received had Defendant brought the motion. Having recognized the requirements of particularity for defendants, in accord with our previous imputation of counsel's duties to a court in a sua sponte ruling, we conclude that the district courts must also provide particularity in their orders when sua sponte ordering a suppression hearing. Similar to *Balderama*, such a holding would guarantee a fair opportunity to respond to the district court's concerns prior to the issuance of an order of suppression.

## IV. CONCLUSION

**{42}** We remand this matter to the Court of Appeals to decide this case, and any related cases held in abeyance, in accordance with this opinion.

**{43} IT IS SO ORDERED.**

**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice, dissenting**

**ZAMORA, Justice (dissenting).**

**{44}** In our adversary system, in both civil and criminal cases, in the first

> instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. . . . Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.

*Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) (internal quotation marks and citation omitted). Because district courts have inherent authority to ensure that defendants' fundamental rights are protected, *maj. op*. ¶¶ 14-19, I agree with the majority's determination that the district court acted within its authority when it raised a concern about the searches in this case. *See State v. Martinez*, 2022-NMSC-004, ¶ 6, 503 P.3d 313 (noting that "[every] court has the power, in its discretion, to relieve [a defendant of the error] and to see that injustice is not done" (quoting *State v. Cunningham*, 2000-NMSC-009, ¶ 12, 128 N.M. 711, 998 P.2d 176)). However, I disagree with how the district court exercised its authority, as it strayed from its role as neutral arbiter into the realm of advocacy. Specifically, after the district court judge researched her entire court docket and selected cases she believed had infirm searches and seizures, she sua sponte ordered suppression hearings in thirty cases within a short period of time. In this case, the district court set the suppression hearing after the deadline had passed to file motions to suppress and after the scheduled trial date; it failed to properly apprise the parties of the purported grounds for suppression; and the order setting the matter for a suppression hearing appeared to prejudge the outcome of the hearing. Finally, the district court questioned the State's witnesses at the

suppression hearing while defense counsel stood silent. Notwithstanding the district court's good intentions, these actions constituted an abuse of the court's discretion and created the appearance of bias or partiality. I would therefore reverse the district court's orders resulting from this flawed procedure and remand with instructions to reassign these cases to a judge whose impartiality may not reasonably be questioned. Accordingly, I respectfully dissent.

## I. THE STATE WAIVED ARGUMENT ON THE CERTIFIED QUESTIONS CONCERNING SEPARATION OF POWERS, INEFFECTIVE ASSISTANCE OF COUNSEL, AND THE PARTICULARITY REQUIREMENTS OF THE DISTRICT COURT'S ORDER

**{45}** As a preliminary matter, I agree with the majority that the State waived its argument on Question 3 (whether the district court's actions violated separation of powers), Question 4 (whether the district's court's sole recourse was to raise ineffective assistance of counsel against attorneys who failed to raise suppression issues), and Question 6 (whether the district court erred in entering suppression orders because the initial hearing orders lacked sufficient particularity and failed to provide sufficient notice) in the Certification Order by either failing to adequately brief them or to brief them at all. *Maj. op.* ¶ 7.[7] However, unlike the majority, I would not have decided the questions the State waived. We "risk overlooking important facts or legal considerations" when we reach issues without the benefit of briefing by the parties. *N.M. Dep't of Hum. Servs., Income Support Div. v. Tapia*, 1982-NMSC-033, ¶ 11, 97 N.M. 632, 642 P.2d 1091; *see Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (stating, "To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them," thereby "creat[ing] a strain on

---

[7]The majority addresses the first question as it was framed by the Certification Order—namely, whether "the district court *lacked jurisdiction* to sua sponte raise the suppression issue *because* it is not 'aggrieved' by the alleged violation of rights." Order of Certification to the New Mexico Supreme Court, *State v. Vasquez*, A-1-CA-40228, at 4 (N.M. Ct. App. June 30, 2022) (emphasis added). But this framing conflates standing with jurisdiction. Standing under the Fourth Amendment concerns the right of a person to challenge a search as unreasonable, while jurisdiction concerns the power of a court to preside over parties and matters. *See generally Terrence Byrd v. United States*, 584 U.S. 395, 410 (2018) (cautioning against conflating jurisdictional "standing" with Fourth Amendment "standing," which "can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search"). I fear that the majority's discussion obscures this distinction by stating that "Rule 5-212(A) NMRA does not suggest that *only* aggrieved persons may move for suppression of evidence." *Maj. op.* ¶ 11. To the contrary, Fourth Amendment jurisprudence is clear that the right to challenge a search as unreasonable is personal in nature and that it "may be enforced by exclusion of evidence *only at the instance of one whose own protection was infringed by the search and seizure*." *Simmons v. United States*, 390 U.S. 377, 389 (1968) (emphasis added). Additionally, the majority concludes its analysis by stating that "the district court did not lack jurisdiction *because* a court does not have to meet the standing requirements under Rule 5-212(A) *and* a district court has adequate constitutional authority to order a suppression hearing on its own motion." *Maj. op.* ¶ 13 (emphasis added). I caution that, in so stating, the majority improperly suggests that the district court's jurisdiction might be dependent upon a standing requirement found outside of the rule. Because the jurisdiction of a district court is not dependent on any demonstration of Fourth Amendment standing, I depart from this language in the majority's opinion.

judicial resources and a substantial risk of error."). Where, as here, the questions before us are novel, this principle applies with extra force. *Tapia*, 1982-NMSC-033, ¶ 11.

## II. THE DISTRICT COURT HAD THE AUTHORITY TO RAISE CONCERNS ABOUT THE SEARCHES IN THIS CASE

**{46}** The district court in this case was concerned that Defendant was receiving representation that failed to protect her fundamental right to be free from unreasonable searches and seizures. The court was specifically concerned that Defendant had been subjected to unlawful searches that her attorney had failed to contest on her behalf. I agree with the majority that the district court had the inherent authority to raise these concerns with the parties and to seek assurances that Defendant's fundamental rights were being protected.

**{47}** For example, the district court would have been within its discretion—as a function of this authority—to call a status conference with the parties and to inquire of defense counsel whether he intended to challenge the searches. *See* Rule 5-603(D) NMRA ("[T]he court may order the attorneys to appear before it for a hearing, at which the defendant shall have the right to be present, to consider . . . such other matters as may aid in the disposition of the trial."). Alternatively, the district court could have inquired into whether Defendant desired substitute counsel, reported concerns about defense counsel to his supervisor, or made a report to the state's Disciplinary Board about defense counsel's persistently deficient performance. *See State v. Lewis*, 1986-NMCA-090, ¶ 17, 104 N.M. 677, 726 P.2d 354 (stating that the decision to appoint substitute counsel on grounds of ineffective assistance is within the trial court's discretion); Rule 16-803(A) NMRA ("A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the New Mexico Disciplinary Board.").[8] Had the district court undertaken any or all of these measures, it would have acted well within its discretion.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION BY ORDERING A SUPPRESSION HEARING AND ADJUDICATING THE SUPPRESSION ISSUES IN THIS CASE

**{48}** But I disagree that the district court had the authority to sua sponte order a suppression hearing in this case—much less to simultaneously order thirty suppression hearings in thirty cases the judge proactively selected from her docket. *Maj. op.* ¶¶ 19-22. The parties' role is to bring forth issues and claims, while the judge must act as a neutral arbiter in adjudicating them and in presiding over the proceeding. *See generally* Jeffery M. Anderson, *The Principle of Party Presentation*, 70 Buff. L. Rev. 1029 (2022). Taken as a whole, the district court's actions in this case amounted to advocacy and not impartial adjudication.

---

8The district court's order suppressing evidence in the case before us demonstrates that it understood these options were available.

**{49}** Although this is an issue of first impression in New Mexico, courts in other jurisdictions have held that district courts lack the authority to sua sponte order suppression hearings or to raise suppression arguments that have not been raised by the parties. *See Commonwealth v. Whiting*, 767 A.2d 1083, 1087 (Pa. Super. Ct. 2001) (stating that "it was improper, and therefore an abuse of discretion for the trial court to voluntarily raise this issue and rule upon it in [the defendant's] favor where [the defendant] never raised the issue in any suppression motion, let alone with specificity and particularity"); *State v. Tyson*, 41 N.E.3d 450, 457 (Ohio App. 3d 2015) (holding that the trial court abused its discretion in sua sponte raising and considering the duration of the defendant's detention during a traffic stop when the defendant did not raise it in his motion to suppress); *State v. Joseph*, 297 A.3d 490, 501 (R.I. 2023) (criticizing the district court for sua sponte raising the issue of racial bias in a traffic stop and stating that "a trial justice should address those considerations when they are *argued* and *raised* by defense counsel to support a motion to suppress"); *People v. Pimentel*, 528 N.Y.S.2d 568, 570 (App. Div. 1988) (stating that "it was improper for the court to sua sponte suppress [a weapon obtained during a search], which was neither the subject of defendant's motion to suppress nor of his argument at the conclusion of the suppression hearing"); *see also State v. Land*, 2014-Ohio-1877, ¶ 17 (Ct. App. 2014) (unpublished) (finding abuse of discretion where the trial court sua sponte called for and conducted a suppression hearing in violation of the principle of party presentation, and stating that, in so doing, the court "overrode [the defendant's express] waiver of his defense"); *State v. Jacobs*, A14-1245 (Minn. Ct. App. Mar. 9, 2015) (unpublished) (concluding that the district court erred by sua sponte considering a suppression issue that was not raised in defendant's motion to suppress because the state did not have notice of the issue); *State v. Poteat*, CR. A. IN01-07-2086R1, ¶ 4 (Del. Super. Ct. Mar. 11, 2005) (ORDER) (stating that "[t]he [c]ourt will not convene a suppression hearing *sua sponte*" and that "[a] request to suppress evidence must be made in accordance with [superior court rules]"), *aff'd*, 931 A.2d 437 (Del. Aug. 14, 2007); *cf. State v. Kindler*, 370 P.3d 909, 913, 915 (2016) (finding abuse of discretion where the district court's "precipitous action in *sua sponte* directing a suppression hearing" to occur "immediate[ly]" deprived defense counsel of the opportunity to develop arguments and evidence).

**{50}** I agree with these authorities and would reverse the district court in this case. Doing so would discourage judicial conduct that, like the conduct in this case, undermines the court's neutrality and the proper functioning of the adversarial system of justice. A brief review of the proceedings below demonstrates why adherence to the principle of party presentation is so essential. "The 'central precept' of an adversarial system is that the combination of active litigants and passive, neutral judges most likely produces results that are 'acceptable both to the parties and to society.'" Anderson, *supra*, at 1039 (citation omitted). In this case, the district court undermined confidence in the outcome by usurping the role of advocate and failing to maintain at least the appearance of neutrality. Sometime in 2021, the district court judge became concerned that appointed counsel appearing in her courtroom were, as a matter of course, failing to raise suppression issues. In reviewing its docket, the district court identified thirty cases it believed had search or seizure issues and (almost simultaneously) filed orders for suppression hearings in all thirty cases, setting all of the hearings for two specific

dates occurring about six weeks later. The district court's orders were generic, failing to identify facts or authority relevant to any individual defendant's case, and informing the parties that they could submit optional briefing in advance of the hearings. Order of Certification to the New Mexico Supreme Court, *State v. Vasquez*, A-1-CA-40228, at 3 n.1 (N.M. Ct. App. June 30, 2022), (noting the order in *Vasquez* is "representative" of the orders in the cases on appeal). In the case before us, the Order for Suppression Hearing included a finding that the information contained in the affidavit for arrest warrant indicated that "the search(es) and/or seizure(s) in this matter were unreasonable . . . and that insufficient probable cause existed for a search warrant." Perhaps because the briefing was optional, the district court set no briefing schedule.

**{51}** The record is unclear as to why the district court decided to issue orders in all thirty cases at once and to schedule hearings on such a shortened timeline. In its order suppressing the evidence in the case before us, the district court justified its actions on the grounds of efficiency. But by failing to observe the principle that issues should be raised and litigated by the parties, the district court short-circuited the truth-finding process that lies at the heart of our adversarial system. This disruption infected the proceedings.

**{52}** First, the district court's order established an unreasonable and confusing timeline for the parties—made worse by requiring the parties to respond to thirty different orders at once. In the case before us, the court initially set the suppression hearing for a date occurring *after* the trial setting, contrary to the timeliness requirement of Rule 5-212 NMRA for filing a motion to suppress. *See* Rule 5-212(C) (requiring a motion to suppress be filed sixty days prior to trial unless, "upon good cause shown, the trial court waives the requirement."). Second, even if the district court had authority to sua sponte set a hearing on the matter, its two-page order for a suppression hearing failed to provide meaningful notice of the purported grounds for suppression. Indeed, the order failed to identify which evidence might be subject to suppression or which of the two searches conducted at Defendant's home were being challenged. *See* Rule 5-120(A) NMRA (requiring that a motion "state with particularity the grounds therefor" and "set forth the relief or order sought"); *see also* 6 Wayne R. LaFave et al., *Search & Seizure* § 11.2(a), at 44 (6th ed. 2020) (noting that "a motion to suppress should be as reasonably specific as possible under the circumstances in order to give the state as much notice as possible of the contentions it must be prepared to meet at the suppression hearing").[9] This is not simply a matter of fairness. The "[adversarial] system is premised on the well-tested principle that truth—as well as fairness—is best

---

[9]Because the State failed to brief the issue, I express no opinion on the certified question of whether the lack of particularity in the district court's order, *on its own*, amounted to error (Question 6). *Elane Photography*, 2013-NMSC-040, ¶ 70 (stating that "[t]o rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them," thereby "creat[ing] a strain on judicial resources and a substantial risk of error"). I raise the lack of particularity in the order only to demonstrate how the district court's decision to order a hearing in the absence of a motion filed pursuant to our Rules deprived the court of vital information in determining whether to suppress the State's evidence. *See State v. Rivas*, 2017-NMSC-022, ¶ 63, 398 P.3d 299 (Nakamura, J., specially concurring) (observing that the Rules of Criminal Procedure, including the rules governing motions to suppress, "are intended to promote basic fairness in the administration of justice").

discovered by powerful statements on both sides of the question." *See Penson v. Ohio*, 488 U.S. 75, 84 (1988) (internal quotation marks and citation omitted). The district court's role is not to search for or litigate the issues in a case but to adjudicate the strength of the evidence and arguments that have been presented by the parties. *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020).

{53} Third, by commandeering the parties' presentation of the issues and evidence, the district court appeared to place itself in the shoes of defense counsel, compromising the neutrality that underlies our adversarial system of justice. This appearance of partiality is reflected in the district court's "finding" (before the suppression hearings) that the evidence indicated that the searches in question *were* unreasonable and that probable cause *was* lacking. *See Reid v. N.M. Bd. of Exam'rs in Optometry*, 1979-NMSC-005, ¶ 7, 92 N.M. 414, 589 P.2d 198 (stating that "a fair and impartial tribunal requires that the trier of fact be disinterested and free from any form of bias or *predisposition* regarding the outcome of the case" (emphasis added)). Similarly, after defense counsel essentially withdrew from the proceeding and declined to cross-examine either of the State's fact witnesses at the suppression hearing, the district court took over and questioned them itself. *See State v. Jiles*, 663 N.W.2d 798, 809 (Wis. 2003) (cautioning that, in a suppression hearing, "[t]he court must not permit itself to become . . . an advocate for one party" because to do so "[does] not afford a reliable determination of [the issue]" (internal quotation marks and citation omitted)).

{54} It is plain that the district court was concerned about the possibility that Defendant had been subjected to unreasonable searches in violation of the United States Constitution. But it is equally plain that the way in which the court raised and disposed of the suppression issue in this case failed to maintain the appearance of neutrality. Society has a "legitimate expectation that judges maintain, in fact and appearance, the conviction and discipline to resolve . . . disputes with detachment and impartiality." *Liteky v. United States*, 510 U.S. 540, 564 (1994) (Kennedy, J., concurring in the judgment). Here, the district court strayed into the role of advocate, and its actions, taken together, evince an impermissible appearance of partiality. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1994-NMCA-139, ¶ 40, 119 N.M. 29, 888 P.2d 475 (stating that "[i]n general, a judge should be disqualified from deciding a matter if an objective observer would entertain reasonable questions about the judge's impartiality" (internal quotation marks and citation omitted)).

{55} As I have said, the district court could have taken other actions when it determined that Defendant was likely the subject of unreasonable searches and was not being served by appointed defense counsel. What the district court could not do is advocate for Defendant in the proceeding before it. "Justice should not only be done, but should manifestly and undoubtedly be seen to be done." *High Ridge*, 1994-NMCA-139, ¶ 40 (quoting *Liteky*, 510 U.S. at 564 (Kennedy, J., concurring in the judgment)). In my view, the district court's actions amount to a clear departure from the role of neutral arbiter in violation of the fundamental precepts of our adversarial system. Accordingly, the order in this case should be reversed, and the matter should be remanded to the district court and reassigned to a judge whose impartiality may not reasonably be questioned. Because the majority concludes otherwise, I respectfully dissent.

**BRIANA H. ZAMORA, Justice**